IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KEDRICK CORTEZ HAWKINS,          ) <br>     ID # 25854-077,                            ) <br>         Movant,                                     ) <br>                                             ) <br> vs.                                                         ) <br>                                             ) <br> UNITED STATES OF AMERICA,                   ) <br>         Respondent.                                 ) | No. 3:19-CV-1667-N-BH <br> No. 3:16-CR-78-N(2) <br><br> Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on July 12, 2019 (doc. 2), should be **DENIED** with prejudice.

## I.     BACKGROUND

Kedrick Cortez Hawkins (Movant) challenges his federal conviction and sentence in Cause No. 3:16-CR-78-N(2). The respondent is the United States of America (Government).

### A.     Conviction and Sentencing

After first being charged by complaint and by superseding indictment with two others, Movant was charged by second superseding indictment with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count One), conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 (Count Two), and conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 (Count Three). (*See* docs. 1, 13, 28.)[2] He pled guilty to Count Three of the second superseding indictment on August 9, 2016, under a plea agreement. (*See* docs. 54, 63.) In

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:16-CR-78-N(2).

the plea agreement, Movant agreed that a factual resume he signed was true and would be submitted as evidence. (*See* doc. 54 at 1.)[3] The factual resume set out the essential elements of the offense charged in Count Three, and Movant stipulated that:

> [O]n April 17, 2015, he met with [a co-defendant] at a hotel in the Northern District of Texas to discuss the distribution of "spice."[4]  From at least 2013 through November 2015, [the co-defendant] intentionally and knowingly shipped through the mail misbranded drugs (i.e. "spice") from Florida to [Movant] in the Northern District of Texas for [Movant] to distribute through his smoke shops.
>
> [Movant] stipulates that he and [the co-defendant], directly or indirectly, reached an agreement to distribute the Schedule I controlled substance AB-CHIMINACA, which was found to be contained in the "spice" [the co-defendant and Movant] agreed to distribute. [Movant] stipulates that he knew the unlawful purpose of the agreement and that he joined in the agreement willfully, that is, with the intent to further its unlawful purpose.
>
> For purposes of relevant conduct, the government and [Movant] stipulate and agree that the drug quantity that [Movant] should be held accountable for is approximately 13 kilograms of a mixture and substance containing a detectable amount of AB-CHIMINACA, a Schedule I controlled substance.

(doc. 53 at 2-3.) At his re-arraignment on August 9, 2016, Movant was advised that if he pled guilty, the Court would not be bound at sentencing by facts stipulated by the parties; it could disregard stipulated facts or take into account facts that were not stipulated. (*See* doc. 149 at 9.) He acknowledged under oath that he had committed each of the essential elements of the offense charged in Count Three, that he read the factual resume before signing it, and that with the handwritten changes to the final page of the factual resume, the facts set forth in it were true. (*See id.* at 10-12, 16-17.)

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[4] According to the second superseding indictment, "'Spice' is a common street term referring to a smokeable organic plant leaf that is laced with a synthetic cannabinoid, which is often a controlled substance or controlled substance analogue. In an effort to perpetuate an illusion of legality surrounding their distribution of 'spice,' individuals market and sell these products as 'herbal incense,' 'potpourri,' or 'aroma therapy products,' to the general public, claiming these products are 'not for human consumption.'" (doc. 28 at 1.)

On October 11, 2016, the United States Probation Office (USPO) prepared a Presentence Investigation Report (PSR) in which it applied the 2015 United States Sentencing Guidelines Manual. (*See* doc. 84-1 at ¶ 39.) The PSR noted the stipulated facts in Movant's factual resume and determined that he was accountable for 60,436 grams of synthetic cannabinoids (SC) or SC analogues, based in part on SC or SC analogue amounts purchased by confidential sources on two occasions from one of Movant's smoke shops and amounts seized during a search of one of his smoke shops. (*See id.* at ¶¶ 26-34.) The 60,436 grams of SC and SC analogues were calculated as the equivalent of 10,092.8 kilograms of marijuana. (*See id.* at ¶¶ 34, 40.) The PSR calculated Movant's base offense level by using the drug quantity table under U.S.S.G. § 2D1.1(c)(3). (*See id.* at ¶ 40.) Because the offense involved at least 10,000 kilograms but less than 30,000 kilograms of marijuana, it found that the base offense level was 34. (*See id.*) Two levels were added under U.S.S.G. § 2D1.1(b)(12) because Movant maintained a premises for the purpose of distributing a controlled substance, since he distributed SCs from two of his smoke shops. (*See id.* at ¶ 41.) Four levels were added for his role as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. (*See id.* at ¶ 43.) Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 37. (*See id.* at ¶¶ 47-49.) Based on a criminal history category of III and an offense level of 37, the resulting guideline imprisonment range was 262-327 months. (*See id.* at ¶ 101.)

On October 21, 2016, the Government objected to the PSR's drug quantity amount and argued that Movant should be held accountable only for the 13 kilograms seized prior to his arrest to which the parties had stipulated in the factual resume, resulting in a four-level reduction to his base offense level. (*See* doc. 86 at 1-2.) The Government also moved for a five-level downward departure under U.S.S.G. § 5K1.1 on November 29, 2016. (*See* doc. 106.)

The USPO submitted an addendum to the PSR on January 6, 2017, in which it addressed the Government's objection. (*See* doc. 115-1.) The USPO supported the PSR as written and noted that the Court was not bound by facts stipulated by the parties. (*See id.* at 1.) The addendum also noted that the PSR's drug quantity amount of 60,436 grams of SCs or SC analogues should be used to calculate the guideline sentence because one of Movant's co-defendants was held accountable for a similar amount; holding Movant accountable for only 13 kilograms would create a significant sentencing disparity. (*See id.* at 1-2.)

On January 9, 2017, the Government objected to the addendum and reasserted its objection to the drug quantity amount. (*See* doc. 116.) On March 31, 2017, Movant agreed with the Government's objection to the drug quantity amount and argued that given his co-defendant's probationary sentence and Movant's guideline sentence calculation of 20 years' imprisonment, a significant sentencing disparity would be caused by not accepting the stipulated drug quantity. (*See* doc. 130 at 1.) Movant also objected to the four-level enhancement for his role as an organizer or leader, arguing that the PSR lacked any basis showing that five or more individuals were participants or criminally responsible in the offense. (*See id.* at 1-2.)

The USPO submitted a second addendum to the PSR on April 21, 2017, in which it addressed Movant's objections. (*See* doc. 133-1.) It noted that Movant's objection to the drug quantity amount on the same basis as the Government had been addressed in the March 31, 2017 addendum. (*See id.* at 1.) Regarding the leader or organizer enhancement, the USPO supported the PSR as written, noting that case agents had verified that Movant employed and directed at least three non-defendants in his criminal activity. (*See id.* at 2.)

On May 11, 2017, Movant's counsel withdrew from representing him, and new counsel was appointed. (*See* docs. 135, 139, 141.) On August 9, 2017, Movant's new counsel filed

amended objections to the PSR and addendum. (*See* doc. 153.) He objected that: (1) the drug quantity amount was calculated using an incorrect equivalency ratio, lacked scientific support and a sound policy basis, and was overstated; (2) the two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for the purpose of manufacturing or distributing a controlled substance was inapplicable because Movant sold many legal products at his smoke shops, the smoke shops profited without selling spice, selling spice was not the stores' primary purpose, Movant did not manufacture the products, and the products were only sold sparingly; (3) the facts did not warrant the four-level enhancement for a leadership or organizer role; and (4) Movant's criminal history was overstated because two of his criminal history points were for offenses for which he served less than 30 days each. (*See id.* at 1-8.)

On August 17, 2017, the USPO submitted a third addendum to the PSR to address Movant's amended objections. (*See* doc. 154-1.) The USPO supported the PSR as written on the first three objections and noted that his final objection was not an objection to the guideline calculations that required a response. (*See id.*) Regarding Movant's objection to the two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises, the second addendum noted that Movant distributed SCs from two of his shops, two controlled purchases of SCs took place at one of his shops, and "kilogram quantities" of SCs were seized at one of his shops. (*Id.* at 2.) It acknowledged that Movant sold other legal goods at his shops, but noted that his sale of legal goods did not preclude the application enhancement because the manufacture or distribution of a controlled substance does not need to be the sole purpose for the premises, only a primary or principal use, for purposes of U.S.S.G. § 2D1.1(b)(12). (*See id.*)

At the sentencing hearing on August 21, 2017, the Court heard arguments on the parties' objections to the PSR and addenda. (*See* doc. 168 at 3-10.) It sustained the Government's

objection to the drug quantity amount and granted its motion for a five-level downward departure, resulting in a new guideline imprisonment range of 97 to 121 months. (*See id.* at 10.) Otherwise, the Court adopted the factual contents of the PSR and overruled Movant's other objections to the calculation of his guideline sentence based on the reasons provided in the PSR addenda. (*See id.*) By judgment dated August 25, 2017, it sentenced Movant to 97 months' imprisonment on Count Three, to be followed by a three-year term of supervised release. (*See* doc. 157 at 1-3.)

On direct appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed on July 6, 2018. *United States v. Hawkins*, 729 F. App'x 374 (5th Cir. 2018). Movant did not file a petition for a writ of certiorari with the Supreme Court.

On January 14, 2022, Movant was released from the custody of the Bureau of Prisons (BOP) to begin serving his term of supervised release. *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 6, 2022).

**B.    Substantive Claims**

In his single ground for relief, Movant contends that he received "ineffective assistance of counsel at sentencing stage in violation of the Sixth Amendment to U.S. Constitution." (No. 3:19-CV-1667-N-BH, doc. 2 at 4.) He claims that counsel was ineffective because:

> (1) Counsel failed to investigate facts and law to support an objection to PSR [sic] regarding U.S.S.G. § 2D1.1(b)(12) (2-level increase for maintaining a premises to distribute a controlled substance);
>
> (2) Counsel failed to present any evidence to support the objection to the PSR regarding § 2D1.1(b)(12); and
>
> (3) Counsel failed to present any testimony from witnesses to support the objection to PSR [sic] regarding § 2D1.1(b)(12).

(*Id.*) The Government filed a response on October 15, 2019. (*See id.*, doc. 9.) Movant did not file a reply.

6

## II.   SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[5] *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

## III.   INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims that his counsel was ineffective in the context of sentencing. (*See* No. 3:19-CV-1667-N-BH, doc. 2 at 4.)

---

[5] Although Movant was released from BOP custody while his motion was pending, the "in custody" determination under § 2255 is made at the time the habeas motion is filed. *See Pack v. Yusuff*, 218 F.3d 448, 454 n.5 (5th Cir. 2000). Additionally, his term of supervised release also satisfies the "in custody" requirement. *See id.*

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A.      **Failure to Investigate and Present Evidence**

Movant contends that counsel was ineffective because he "failed to investigate facts and law to support an objection to PSR [sic] regarding U.S.S.G. § 2D1.1(b)(12) (2-level increase for maintaining a premises to distribute a controlled substance)," and he "failed to present any evidence to support the objection to the PSR regarding § 2D1.1(b)(12)." (No. 3:19-CV-1667-N-BH, doc. 2 at 4; doc. 3 at 16.) He argues that "it literally defies all rationality and reasoning for counsel's total disregard of Movant's previous idea and request for counsel to investigate and compile the store's [sic] monthly revenue/tax documents as mitigating evidence to rebut the enhancement [under U.S.S.G. § 2D1.1(b)(12)]." (*Id.*, doc. 3 at 21.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial," however. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (stating, in context of direct appeal that, "[t]o establish his failure to investigate claim, [the defendant] must allege with specificity what the investigation would have revealed and how it would have benefitted him."). "[T]here is no presumption of prejudice based on the failure to investigate." *Gonzalez v. United States*, Nos. 5:19-CV-145, 5:15-CR-1112-01, 2020 WL 1893552, at *3 (S.D. Tex. Jan. 24, 2020) (citing *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990)).

The record shows that the information in the PSR was obtained from the charging documents, factual resume, investigative materials from the DEA, and interviews with DEA agents in determining Movant's offense conduct. (*See* doc. 84-1 at ¶ 14.) His offense conduct included

SCs seized during two traffic stops of vehicles leaving his shops in June and August 2015, two controlled purchases of SCs from one of his smoke shops in November 2015, and the seizure of over 44,000 grams of SCs during a search of one of his shops in December 2015. (*See id.* at ¶¶ 22-23, 26-27, 29.) Additionally, Movant stipulated in his factual resume that he and a co-defendant agreed to distribute "spice," and "[f]rom at least 2013 through November 2015, [the co-defendant] intentionally and knowingly shipped through the mail misbranded drugs (i.e. 'spice') from Florida to [Movant] in the Northern District of Texas for [Movant] to distribute through his smoke shops." (*Id.* at ¶ 32; doc. 53 at 2.) The PSR added two levels to Movant's offense level under U.S.S.G. § 2D1.1(b)(12) because he maintained premises, i.e., his smoke shops, for the purpose of distributing a controlled substance.[6] (*See* doc. 84 at ¶ 41.)

A PSR "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (citation and internal quotation marks omitted). While "a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence." *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999) (quoting *United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994)). Further, "[a] defendant's rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate, or unreliable,' and '[m]ere objections do not suffice as competent rebuttal evidence.'" *Id.* (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

Here, counsel filed objections to the PSR's application of U.S.S.G. § 2D1.1(b)(12) on the basis that Movant sold many legal products at his shops, the shops profited without selling spice,

---

[6] Section 2D1.1(b)(12) states, "If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase [the offense level] by two levels."

Movant did not manufacture the products, and he only sold the products sparingly. (*See* doc. 153 at 6.) The third addendum to the PSR addressed these objections; it emphasized that the enhancement applies to the maintenance of a premises for the purpose of *distributing* a controlled substance, including storage of a controlled substance for the purpose of *distribution*, and it noted that there were two controlled purchases of SCs at one of Movant's shops and a search of one of the shops resulted in the seizure of "kilogram quantities" of SCs. (doc. 154-1 at 2.) It also acknowledged that Movant sold legal products at his shops but maintained that those sales did not preclude application of U.S.S.G. § 2D1.1(b)(12). (*See id.*) Counsel again objected to the enhancement at the sentencing hearing, arguing that Movant sold legal products at his shops, and that "the spice was collateral, not the primary purpose" of the shops. (doc. 168 at 5-6.) Movant's objections to the enhancement were overruled based on the reasons provided in the addenda to the PSR. (*See id.* at 10.)

Movant argues that counsel should have "investigate[d] the store's monthly revenue and compile[d] a record of the supporting documents" because "the records would show practically no discernible difference in the store's monthly revenue when selling the spice, as opposed to when the spice was not being sold (thus supporting the objection in regards to the last paragraph of the commentary application note 17)." (No. 3:19-CV-1667-N-BH, doc. 3 at 18; *see also id.* doc. 3 at 33-48.) This argument is merely a variation of the arguments made by counsel that were rejected.

The commentary to U.S.S.G. § 2D1.1(b)(12) provides:

> Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution.
>
> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant

11

> controlled access to, or activities at, the premises.
>
> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1(b)(12) cmt. n.17 (2015). The commentary makes it "clear that there can be more than one primary use of a building for purposes of evaluating the enhancement." *United States v. Lopez*, 750 F. App'x 349, 351 (2018). The Fifth Circuit has repeatedly held that "the evidentiary bar for establishing a primary use 'has not been set high.'" *United States v. Galicia*, 983 F.3d 842, 844 (5th Cir. 2020) (citations omitted). Further, the primary uses of a premises "need not be equivalent" to apply the enhancement. *See id.*

Movant has provided no evidence to rebut the facts upon which the enhancement was applied in the PSR, namely, that he distributed SCs from his shops, and his apparent contention that a primary purpose of the shops could not be distribution of a controlled substance if it was not also a primary source of the shops' reported revenue is without merit. The self-reported monthly revenue and tax evidence he includes with his § 2255 motion, which he argues counsel should have obtained and presented in support of his objections to the enhancement, do not rebut his stipulation that a co-defendant mailed SCs to Texas over a period of years for him to distribute from his shops, the PSR's determination that there were two controlled purchases of SCs from one of his shops, and the seizure of multiple kilograms of SCs from one of his shops. To the extent he argues that the revenue and tax records show that there was no difference in revenue between when spice was being sold and when it was not, and therefore the sale of spice was only a collateral or incidental use of the shops, primary uses of a premises "need not be equivalent" for the

enhancement to apply. *Galicia*, 983 F.3d at 844 (affirming application of § 2D1.1(b)(12) where the defendant lived and raised his family in the premises at issue for 35 years, only stored drugs in his garage for a few hours three times in a 2.5-year period, and had two scales in a storage shed). Movant has not shown that counsel's performance was constitutionally deficient on the grounds that he did not further object to the enhancement by obtaining or offering into evidence monthly revenue and tax documents for Movant's shops.

Even if counsel's performance had been deficient, deficient performance alone is insufficient to establish relief under § 2255. *Strickland* also requires a showing of prejudice. To show prejudice in the sentencing context, a movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice."). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture, however. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Moreover, conclusory allegations are insufficient to obtain relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) ("'[M]ere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.'").

As discussed, based on the reasons given in the PSR addenda, the Court overruled Movant's objections to the enhancement under U.S.S.G. § 2D1.1(b)(12) and stated, "I don't think any further variance is appropriate." (*See* doc. 168 at 10.) Aside from conclusory statements, Movant has failed to demonstrate a reasonable probability that the Court would have sustained the objections to the enhancement and imposed a lower sentence if not for counsel's alleged

deficiencies. (*See* No. 3:19-CV-1667-N-BH, doc. 3 at 26.) He therefore has failed to establish prejudice under *Strickland*. His claims regarding counsel's alleged failure to investigate and to present evidence should be denied.

### B.     Failure to Call Witnesses

Movant also contends that counsel was ineffective because he "failed to present any testimony from witnesses to support the objection to PSR [sic] regarding § 2D1.1(b)(12)." (*Id.*, doc. 2 at 4.) He argues that "[o]ne witness was present in the courtroom with evidence and was ready to testify," and he presents an affidavit from the proposed witness, Sandra Villers (Villers), who was also one of his co-defendants. (*Id.*, doc. 2 at 4; *see also id.*, doc. 3 at 32.)

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). In order "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the [movant] must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Id.*; *see also Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985). Movant has failed to meet this burden.

Here, Movant identified only Villers as a proposed witness and claimed that she was present in the courtroom at the sentencing hearing "and was ready to testify." (No. 3:19-CV-1667-N-BH, doc. 2 at 4; *see also id.*, doc. 3 at 31.) Movant provided Villers' affidavit, in which she states that she told counsel she "could speak on behalf of the shop since I manage it and that the employees at the time could too." (*Id.*, doc. 3 at 32.) Villers also testified that she "prepared five years [sic] worth of sales reports, invoices and tax payment history (including the year plus AFTER

14

[Movant] was incarcerated and spice sales completely omitted). [Counsel] knew I had the information with me and did not even mention it." (*Id.*) She appears to indicate that the reports "show[ed] valid LEGAL sales from before and after spice was present." (*Id.*) The affidavit does not set out her proposed testimony, however, and Movant does not provide any evidence setting out Villers' proposed testimony or showing that the testimony would have been favorable to a particular defense. To the extent the affidavit is intended to show that she would have testified about the monthly revenue and tax evidence he submitted with his § 2255 motion, he has not shown that counsel's performance was constitutionally deficient for the same reasons discussed in the prior section. Accordingly, he has failed to satisfy his burden under *Strickland* to establish ineffective assistance of counsel for failure to call the only identified witness and affiant to testify in support of the objection to the enhancement under U.S.S.G. § 2D1.1(b)(12).[7] *See Day,* 566 F.3d at 538; *Alexander,* 775 F.2d at 602. The claim should be denied.

## IV. EVIDENTIARY HEARING

Movant requests an evidentiary hearing before this Court on his claims. (*See* No. 3:19-CV-1667-N-BH, doc. 2 at 12; doc. 3 at 27-29.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (citation omitted).

Here, Movant has failed to demonstrate the existence of a factual dispute that creates a

---

[7] To the extent Movant's § 2255 filings indicate the existence of other witnesses to support the objection to the enhancement, he has failed to name any such witnesses and to provide any evidence demonstrating that these individuals were available to testify at trial and would have done so, setting out the content of the witnesses' proposed testimony, or showing that the testimony would have been favorable to a particular defense. (*See* No. 3:19-CV-1667-N-BH, doc. 2 at 4; doc. 3 at 31-32.) He therefore has failed to satisfy his burden under *Strickland* to establish ineffective assistance of counsel for failure to call any unidentified witnesses, and any such claim should also be denied on this basis.

15

genuine issue. He also has failed to come forward with independent indicia in support of the likely merit of his claims. *See Reed*, 719 F.3d at 373. Movant has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## V. RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on July 12, 2019 (doc. 2), should be **DENIED** with prejudice.

**SIGNED this 10th day of May, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE